Case number 24-1401, Nationwide Recovery Inc et al. v. City of Detroit MI Court argument is not to exceed 15 minutes per side. Mr. Delden, you may proceed for the appellants. Good morning. May it please the court, Mark Delden on behalf of the appellants, I'd like to reserve 3 minutes for rebuttal. Thank you. The district court in this case invented a new defense to 1983 cases. After acquired evidence can be used not to limit damages, but to completely cut off any damages when a municipality has deprived a contractor of their property without providing procedural due process. This extension of defenses available under 1983 is legally baseless, deeply unfair, and it contradicts both the Supreme Court precedent and this circuit's precedent. There's no legal support and it creates a perverse incentive for the government to shoot first and ask questions later. The McKinnon case had a limited scope. McKinnon held that ADEA employment claims could use, the defendants there could use after acquired evidence to limit future damages only. The employee was still entitled to remedies up until the date of discovery. It never erased liability. What it didn't do is it didn't apply to 1983 cases, didn't apply to procedural due process claims, and it never created a total bar to compensatory damages. The district court combined McKinnon and Franklin and used evidence completely unrelated to the original reason that the city of Detroit terminated Nationwide's permit. So my understanding is that your side conceded at one point that after acquired evidence was relevant and could be used, right? And the judge specifically mentions this in the opinion and in the hearing says, are you sure, basically, and you say, yeah, yeah, you can do it. So the question, I guess, is using that evidence, my reading of the district court's opinion is, look, even if you had had a hearing, the lack of the hearing isn't what deprived you of the license. It would have been your misconduct. Why is that not just like a regular causation analysis? After acquired evidence relating to the incident, and if I may give an example, so the reason Nationwide, the city terminated Nationwide's towing permit was they believed Nationwide was involved in the theft of a white Cherokee on July 15, 2017. Suppose five days later, those car thieves offered up a confession. That confession, which occurred after the permit was terminated, that relates to the incident involving the Cherokee. The after acquired evidence that is completely unrelated to the reason of the city's decision, that was not conceded. What the city did, once the incident was resolved in Nationwide's favor, once a state court trial found Nationwide was not involved with car thieves regarding the incident, the city started playing whack-a-mole. They launched an audit into Nationwide's fees. They came up with this theory that Nationwide was colluding with car thieves. In discovery, the city couldn't identify a single criminal statute that one of Nationwide's employees violated. The city wants to claim Nationwide was colluding with car thieves, but where's the crime? The city wants to claim Nationwide was, their billing practices were fraudulent, but the board of police commissioners There was no crime? So you're saying, I'm in cahoots with the car thieves, they tell me where to pick up the car, it's not technically a crime, so the city couldn't revoke your license for that? During the city's 30B6 deposition, one of the designated topics was identify all crimes that Nationwide's employees had committed. At the time, Captain Parrish could not identify a single one because there were no crimes. He was unable to submit a warrant because there wasn't sufficient evidence. What was uncovered was Kenneth Christensen was texting with a car thief's phone that was in evidence lock-up. Captain Parrish said it was inaccurate to state that Christian was communicating with car thieves when the cell phone was in evidence lock-up. If the city believed that Nationwide was colluding with car thieves after the termination, when they launched this investigation, they could have brought Nationwide before the board of police commissioners, but they didn't. The collusion with car thieves is completely separate from the incident that occurred on July 15th of 2017. That related to one specific incident of a white Cherokee on Green Lawn that Nationwide was cleared of. When the city terminated Nationwide's permit, they had absolutely no basis to do so. And then the city launched an investigation, looked into Nationwide's billing practices, and came up with a variety of different reasons why it could have terminated Nationwide's permit. But that's not why the city terminated Nationwide's permit. You're not disputing, though, that these other reasons could have been a basis for termination? I am disputing that. Are you saying they don't fit within the definition of reasons for why there could be termination? The board of police commissioners has never once terminated a towing company because of billing practices, and that was testified to by Captain Parrish. So if Nationwide had an opportunity to present its case on its billing practices before the board of police commissioners, we don't know how they would have ruled, because Nationwide didn't have an opportunity. But you have the testimony of this other individual who said that they would have terminated. That was Captain Parrish, and that was based on his belief. Why isn't that enough to find that there would have been a termination? Certainly, because an affidavit must be based on personal knowledge. And having personal knowledge of how 11 different people would vote based on a hearing where Nationwide could present evidence, that's speculation. During his deposition, when Captain Parrish was asked what's the difference between Nationwide's fees and Mars, a towing company called Mars, how Mars was dealt with, he goes, one of the big differences was Mars had a hearing before the board of police commissioners, and their attorney spent a lot of time explaining these billing practices. And Captain Parrish presented an 82-page report to the board of police commissioners about Mars, about Mars' billing practices, about quid pro quos that Mars had with police officers. Mars' permit was not terminated because Mars had due process. Mars got to present a defense. It wasn't just Captain Parrish saying what he believed the board would do. It was an 11-member board, each one of which has its own thoughts about how they would rule. Captain Parrish said he never talked to a board member about how they would vote. His belief came up because that was a necessary litigation position to get summary judgment in the city's favor. But he had worked pretty closely with that board, right? That was part of his job. The board is a civilian oversight body for the police department. So he had worked closely with them, or he hadn't? You know, I mean, he would be the one who would recommend discipline for towing companies to the board. To that particular board. Correct. But I wouldn't say that he... He knew nothing about that board, how they would vote, how they voted in the past, how they acted. It would not have been me going up there, and I'd be like, oh, I don't know, maybe they would have taken their permit off. Your Honor, he did know how the board voted in the past, because he had personal knowledge with how they voted in the past. So why wouldn't that give him some indication of how they might vote in the future? Wouldn't you have an idea? Because how somebody would vote, how 11 different people would vote, after essentially a trial proceeding where Nationwide is allowed to present its case, that's speculation, and that comes from a Nagel case. Now, the only difference from the Nagel case, an 11-member body, is I think Nagel had 119 union members. But still, you're looking at 11 people, half of which are elected, half of which are appointed, and none of whom heard from Nationwide, none of whom heard Captain Parrish's evidence. He's just basing it on had they heard Captain Parrish's evidence, he believes they would have voted that way. An affidavit can't be based on belief, it has to be based on personal knowledge. Well, I mean, he does, I agree with that, but he does have some personal knowledge. He's worked with the body. I mean, that is personal knowledge, right? I mean, I understand, I don't, I'm not saying everything in that affidavit was, you know, I mean, some of it seems a little questionable, but I'm not sure why a person wouldn't be able to say, I've worked with this body for however long I have, and I've seen this many cases come in front of them, and I think this is how they would have come out. Let me ask you a question, though. Assuming, let's say you're right in that it was improper speculation, how important was that conclusion to the district court's ultimate outcome? I believe that was essential to the district court's opinion that had Nationwide been afforded a hearing, the board would have terminated Nationwide's permit. That was part of the final opinion. I thought the district court said that the fees issue was an alternative basis to support the decision. So it seems to me if that alternative basis is your problem and there's another basis for the decision, then why wouldn't the alternative issue just be harmless error? Even if it was an alternative basis, the other issue had nothing to do with the incident. Nationwide was clear of the incident involving the white Cherokee. After acquired evidence, Nationwide should have been afforded a hearing for that. At a minimum, if this panel allows after acquired evidence to be used to cut as a defense to 1983 cases, it should operate as a damages cutoff, not as nominal damages. It would go from the date that it was discovered. That's not what the district court did. The district court awarded Nationwide nominal damages. Didn't the district court do that in reliance on the agreement of counsel? I was trying to look back and find the first place that you argued the evidence of collusion could not be considered. It had not even been raised in the response to the city of Detroit's second motion for summary judgment. Right? Right? Yeah. Right or wrong? I'm sorry. When was it raised? When was the fact that you can't use this sort of evidence of collusion, when did that issue get raised as a challenge? There's testimony in the opinion that says that counsel agreed, that counsel said yes, that that evidence can be used. There was a series of orders requiring supplemental briefing that was issued prior to the city's second motion. What was acknowledged was evidence relating to the basis for the city terminating Nationwide's permit, and the basis for the city terminating Nationwide's permit was what occurred on July 15th. It wasn't what the city investigated after the termination. It was what occurred on July 15th. I see my time has expired. Thank you. You'll have your rebuttal. Good morning, Your Honors. May it please the Court. Nate Fink appearing on behalf of the defendant Appelli, city of Detroit. I think we've extensively briefed these issues, and I'd like to make myself available for questions from the panel. I will say that this appeal is not about whether Nationwide was engaged in corrupt and unlawful activity. I think the record evidence is very clear that it was. We're looking at some technical distinctions that Nationwide is trying to rely on to somehow avoid their responsibility for this misconduct. I don't think that it's a good, I don't think the law supports, or if it's generally broadly a good policy, to give corrupt toe operations some out through some technical violation. And I think that the district court did an extensive review of this record and concluded that. Giving them a hearing isn't a technical, I mean, it's required by the Constitution, isn't it? Sure. It's not a technicality. Right. You can get a hearing. I agree. No, and there's no dispute about that. And the district court held that the city had, in fact, violated Nationwide's due process rights in not providing that hearing. However, the court then reviewed the extensive evidence of, after acquired evidence, because this was evidence that had been concealed by the plaintiff, by Nationwide. Is there enough after acquired evidence about pre-July, whatever it is, 19 conduct that would have warranted the result, the revocation of the permit? Absolutely not. In other words, my understanding is the billing, nobody knew about the billing issues on July 19th when the permit was revoked, right? Well, it wasn't the basis for the revocation. It was not the initial basis for the revocation. But my understanding is you're saying, or the judge is saying, because of the concession about after acquired evidence, the fact that they later acquired, your client later acquired evidence that there was billing misconduct that was prior to July 19th, or maybe prior to whenever the hearing would have been. I mean, I don't know. I guess the idea is by the time a hearing would have taken place, it would have been part of the city's case against this towing company and would have led to the revocation of the permit, right? Yeah, I think that's right, Your Honor. Why is that not speculative? Like why are we not getting too far down the chain here? Well, the evidence was not speculative, Your Honor. And as to your initial- But about what would have happened. When would the hearing have taken place? What would the case have been against this company? What would the result have been? Because ultimately, the district court's decision is, essentially, you didn't lose your permit because you didn't have a hearing. You lost your permit because you're a bad actor, right? So I think the law, you know, Kerry Pythas Franklin makes it clear that it's not the failure to provide due – the plaintiff is entitled to damages caused by the failure to provide the due process, not damages caused by the deprivation itself. And here, where, Your Honor, as you've indicated, or I think the record is very clear, that there was extensive evidence that was acquired after the fact of both systematic overcharging of – and really extorting Detroiters who were just trying to get their vehicles back. The evidence that was acquired after July 19th was of extensive overcharging before the termination. And then there was also evidence, extensive evidence, of colluding with car thieves before July 19th. What about counsel's point that nobody's ever gotten their permit revoked because of billing irregularities? Well, I mean – Excessive fees or whatever. Yeah, and in the briefing, and frankly, I think in Judge Parker's opinion, she addressed each of those incidents, and they were not equivalent. I will say that since this happened, one of the companies that was referenced, H&B Land, has actually had its permit or its contract terminated. That was within the last year. But that related to billing irregularities. They didn't – no, there's actually pending litigation that relates to that. But as to this point about – as to Your Honor's question about speculation, and as was discussed during Brother Counsel's argument, Commander Parrish, who provided the declaration that the district court relied on, in part, in reaching its conclusion, extensive experience with the towing operations, running the city's towing operations for many years, interacting with the BOPC. And I think it's very reasonable for him to conclude, based on all of this evidence that he had, that the board would have terminated. And Nationwide did receive process. It wasn't through that particular formal process through the BOPC, but there was a very, very comprehensive trial, nuisance trial before Michigan State Court, where the – it was then just the former chief judge of the Wayne County Circuit Court held that Nationwide was, in fact, a nuisance and was engaged in – was overcharging customers in almost every circumstance, in almost every case. And that decision was affirmed by the Michigan Court of Appeals. And there was also the Inspector General proceeding, which also gave Nationwide extensive opportunity to present their case and defend themselves. So they did receive process. And at each stage, all we've seen is extensive evidence of broad corruption, collusion with car thieves, and systematic overcharging. And so I think that the evidence is very clear, and that the district court very appropriately ultimately held that, yes, there was a violation of due process, but this is a textbook example of where nominal damages is appropriate. Because otherwise, we would be rewarding Nationwide's ability to conceal this evidence. Ultimately, the evidence was just extensive that there was corruption here. And they shouldn't be given a windfall because of this – their success in concealing this information. Now – How long did this – did the – how long was it until the position was changed on whether – on what evidence could be heard? I'm – in looking back, it seems to me that the position was that, of course, you can use this evidence. This is about the collusion or about the fees, both of which. Do you have a memory of the first time that that changed to say that there is some limitation on what evidence can be considered? Your Honor – After acquired evidence. I'm sorry. Let me – let me call that a different name. I'm concerned about this kind of using it in this employment context. But to me, it seems to me that it is more about what evidence is admissible with respect to damages. So give your answer in that context. Your Honor, if I may clarify, do you mean the distinction between the collusion with car thieves and the overcharging issue? And when it was – when the city took the position that it was – in addition to the collusion with car thieves issue, that it was also the overcharging issue?  Yeah. They're somewhat intertwined because the – my understanding of what the district court's decision says is that – that counsel agreed that evidence that came to light after the event could be considered, period. That's correct, Your Honor. And the district court quoted from the record – and now I'm reading from the district court's opinion at page ID 7948. This was then citing back to page ID 5904 in the record. And the court – the district court said the parties agreed, evidence available on or prior to July 19, 2017, even if unknown to the city at that time, is admissible and relevant to decide whether the city would have made the decision had it afforded nationwide a hearing. And importantly, it was not limited to the incident, as Brother Counsel had referred to. You know, the admission was if there's after-acquired evidence that shows that nationwide would have been terminated anyway, that can come in. And there's really no dispute about that. And that after-acquired evidence is extensive and very clear that there was extensive both collusion with car thieves and systematic overcharging. But it's not – this is to Judge Stranch's point – it's not a strict application of the after-acquired evidence doctrine from employment law, right? Because my understanding is you would get back pay from when the unlawful termination occurred to the point at which the information is discovered. So they would be entitled to – if we strictly applied that doctrine, wouldn't they be entitled to damages from July 19 until the record shows that, I guess, the hearing would have happened and the permit would have been revoked? Well, this is – I mean, if I'm analogizing to that particular doctrine. Yeah, I understand. So – and that doctrine is the McKinnon case, which is in the employment context. And we do present that, and the district court ruled on that on an alternative basis. But you're saying a strict application of Cary, which is mostly just about causation, is saying the lack of the hearing didn't cause your damage. Your misconduct caused your damage. That's right. But because of counsel's concession, there is after-acquired evidence that is admissible on that point where maybe it wouldn't have been, right? Right, right. Yeah, yes, absolutely. Well, I do think that the after-acquired evidence – I don't think there's a fair dispute on that. I think that it should be – it would be admissible. It would have been anyway. Yeah, regardless. Yeah, regardless. And as to whether – the sort of alternative argument here, the testimony in the record was that Commander Parrish had suspicions about overcharging before July 19th. It wasn't the basis that was given initially for the termination. He received a memo about 10 days after – it might have even been less than that, a couple days less than that – after July 19th that was talking about this extensive overcharging. There were a couple of examples, sort of egregious examples, dating back I think to February of 2017. And then he did a memo later on that showed that it was extensive. And the Michigan State Court, including the Trial Court and Court of Appeals, confirmed that the evidence was clear about that. But again, the McKinnon is an alternative argument. I think under Kerry, nominal damage is here absolutely appropriate. And otherwise, we're giving a windfall to a corrupt tow operation. And I don't think that's supported by the law and the record here. I – let's see if they're in here. There was some discussion in the briefing about whether or not anything had changed between the district court's initial ruling and the subsequent ruling and summary judgment. I think we briefed that extensively as well. There was an issue about whether there had to be evidence of actual payment. We do think there's evidence in the record of actual payment of car thieves. But the district court, I think, addressed that even if you didn't have that evidence of the payment. You don't need that because, as the court reasoned, a towing company aids in the concealment of a vehicle's theft and the destruction of potential evidence of other crimes simply by receiving those tips. So you don't have to have the evidence of payment. And that was the district court's, I think, appropriate rationale for changing its decision and ultimately granting summary judgment and awarding nominal damages here. And with that, I would ask, unless the court has any other questions, I would ask that the district court affirm – that this court affirm the district court's ruling. Thank you. Thank you. Nationwide had a five-year permit that expired at the end of May of 21. At any time after the city revoked its permit and these new reasons were allegedly discovered, the city could have brought Nationwide before the Board of Police Commissioners, but it didn't because there was a risk in doing that. The city didn't want to take that risk. What about the public nuisance case? The public nuisance case was not a meaningful opportunity to be heard because the public nuisance case could not have resulted in Nationwide receiving its towing permit, but the public nuisance case absolved Nationwide as it related to what occurred on July 15, 2017, which was what the city's decision on July 19, 2017, was about. The decision ultimately came about about evidence that was collected for that time period but not analyzed until after the event, and it had to do with the number of cars that had been towed by this one representative, a number that went from like one or two cars a day to like 12 cars a day. The decision that the city made on July 19 was based upon a memo from then, I believe, Lieutenant Parrish to Assistant Chief James White. Assistant Chief White testified that the decision was based on a white Cherokee that was stolen on July 15, 2017. The state nuisance trial absolved Nationwide of any involvement in the theft of that Cherokee, but neither that trial nor the hearing before the Inspector General was meaningful. It couldn't have resulted in Nationwide receiving its towing permit back, and it didn't. Is it your position that if the person involved did not break a law, that then there is no basis to cut off a towing privilege? That is not my position. The position in the rules is if the towing company or its employees are engaged in fraud or criminal conduct. So it could be fraud that is not necessarily a criminal violation? Correct. As soon as reasonably practical, the permit holder should be afforded a hearing, and that was never provided. Throughout this litigation, at any point, the city could have provided Nationwide with a hearing. The big difference between McKinnon and this case is McKinnon involved an at-will employee and a private employer. Nationwide wasn't at-will. It had a property interest, and the city is not a private employer. It's the government, and there was a process in place here. There was a procedure. All the city had to do was give Nationwide a hearing. I see I'm out of time. Thank you. Thank you. We thank you both for your briefing and arguments, and an opinion will be issued in due course.